IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JEFFERY BOOZER,                  §
TDCJ-CID NO. 561712,             §
                                 §
          Plaintiff,             §
                                 §
v.                               §    CIVIL ACTION NO. H-07-0139
                                 §
CHARLES NAGEL, et al.,           §
                                 §
          Defendants.            §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Jeffery Boozer, brings this action pursuant to 42 U.S.C. § 1983 against defendants, Charles Nagel, Jan Gustofson, Dr. Betty Williams, Margaret Mosley,[1] Alfredo Mayuman, and Shanta Crawford, for allegedly denying him medical treatment in violation of his constitutional rights (Docket Entry No. 1). Pending before the court are plaintiff's Motion for Appointment of Counsel (Docket Entry No. 13), Plaintiff's Declaration for Entry of Default (Docket Entry No. 15), Plaintiff's First Request for Production of Documents (Docket Entry No. 16), Defendant Mosley's Motion to Clarify (Docket Entry No. 17), and Defendants' Motion for Summary Judgment (Docket Entry No. 31).[2] For the reasons set forth below,

_____

[1]Although plaintiff originally listed "Tonya Mosely" as a defendant, Margaret Mosley is the correct defendant.

[2]The organization of defendants' motions, particularly the medical timeline with references to the supporting parts of the appendix, was very helpful to the court in evaluating the case. The court appreciates the efforts of the attorney general in presenting the motion in a concise, organized fashion.

Defendants' Motion for Summary Judgment will be granted, and all other motions will be denied.

## I.  <u>Plaintiff's Allegations</u>

Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs by twice ordering plaintiff to climb onto a work trailer despite his medical restrictions, by denying him medical treatment after he twice fell from the work trailer, and by providing inadequate medical care. Plaintiff alleges that he is unable to perform physical activities, such as field work or climbing a trailer, because he suffers from chronic pain in his back and legs.[3]  In his complaint, plaintiff failed to indicate what kind of relief he seeks (injunctive or monetary), or whether he was suing defendants in their official or individual capacities.

## A.  **Sgt. Gustofson**, **Correctional Officer**

Plaintiff alleges that Gustofson was a supervisor of the field work force to which plaintiff was assigned.[4]  On February 24, 2006, plaintiff alleges he notified Gustafson that he was not physically capable of climbing onto the work trailer without risking injury.[5]

---

[3]Plaintiff's Complaint, Docket Entry No. 1, p. 5; Plaintiff's More Definite Statement, Docket Entry No. 10, p. 5.

[4]Plaintiff's More Definite Statement, Docket Entry No. 10, p. 4.

He alleges he informed Gustafson that he had a medical condition that prevented him from performing work-related activities and that the medical department had heard his complaints of back and leg pain, but had not responded by providing him with restrictions.[6] Plaintiff alleges that despite this information Gustofson ordered plaintiff to climb onto the work trailer and that when he attempted to comply with Gustofson's order he stumbled and fell to the ground, injuring his lower back and augmenting the pain in his legs.   Plaintiff further alleges that later, after he told Gustafson he had fallen, Gustafson denied plaintiff medical care.[7]

Plaintiff also alleges that he was called out to work in the field force under the authority of Gustafson on February 28, 2006. Plaintiff claims Gustofson had no concern for plaintiff's health or well-being.   Plaintiff alleges that on this date he was again ordered to climb onto the work trailer and again stumbled and fell to the ground, injuring his back, legs, and shoulder.[8]  Plaintiff alleges that Gustofson witnessed plaintiff's fall and medical assistance was called this time.[9]

---

[6]Id. at 4; Plaintiff's Complaint, Docket Entry No. 1, Statement of Claim, p. 1.

[7]Plaintiff's Complaint, Docket Entry No. 1, Statement of Claim, p. 1.

[8]Id.

[9]Plaintiff's More Definite Statement, Docket Entry No. 10, p. 4.

-3-

**B.   Mr. Nagel, Physician's Assistant (PA)**

Plaintiff alleges that Nagel examined him upon arrival at the medical department after his second fall from the work trailer, but only touched his left shoulder, legs, and back.[10]  Additionally, plaintiff alleges that Nagel injected him with twenty-five milligrams of Phenergan for pain and issued a two-day cell pass, which allowed plaintiff to remain in his cell.[11]

Plaintiff alleges that Nagel refused to order x-rays to determine the extent of plaintiff's injuries or to refer plaintiff to a medical doctor for further examination.[12]  However, plaintiff also alleges he was told x-rays were ordered, but that those x-rays were never taken because the x-ray machine was too small to accommodate plaintiff, who weighed 456 pounds at the time.[13]

Furthermore, plaintiff alleges that he continued to complain of pain from his injuries, but that Nagel denied him treatment, claiming plaintiff did not have any injuries and was fit for work in the field force.[14]  Consequently, plaintiff alleges that Nagel was deliberately indifferent to his serious medical needs because

---

[10]Id. at 2.

[11]Id.

[12]Id.

[13]Plaintiff's Complaint, Docket Entry No. 1, Statement of Claim, p. 2.

[14]Plaintiff's More Definite Statement, Docket Entry No. 10, p. 2.

-4-

Nagel continuously refused to administer adequate treatment to plaintiff, despite knowing the seriousness of plaintiff's injuries.[15] This indifference, plaintiff alleges, caused him to endure further injury, pain, and discomfort.[16]

**C.   Ms. Crawford, Registered Nurse Practitioner (RNP)**

Plaintiff alleges he sent Crawford numerous letters requesting her assistance when the hospital refused to x-ray him because he was too large for the hospital's x-ray machine.[17] He alleges that Crawford was deliberately indifferent to his serious medical needs because she refused to assist him with acquiring x-rays or to provide him with adequate medical care.[18]

**D.   Dr. Williams**

Plaintiff alleges that Dr. Williams was deliberately indifferent to his serious medical needs when, despite being aware of the seriousness of plaintiff's complaint and the risk of injury, she refused to administer adequate medical treatment.[19] Plaintiff alleges that on April 13, 2006, Dr. Williams increased plaintiff's pain medication so that he could perform work duties in the belief

---

[15]Id. at 1-2.

[16]Id.

[17]Id. at 4.

[18]Id.

[19]Id. at 3.

that hard work and fresh air would be good for him.[20]  Plaintiff alleges that on July 14, 2006, after reviewing x-rays ordered by another doctor, Dr. Williams ordered the reinstatement of plaintiff's prior medical restrictions:  sedentary work only, limited standing, no lifting over twenty-five pounds, no bending at the waist, no squatting, no climbing, limited sitting, and lower bunk only.[21]

**E.    Mr. Mayuman, PA**

Plaintiff alleges that Mayuman was deliberately indifferent to plaintiff's serious medical needs because Mayuman refused to provide plaintiff with treatment on more than one occasion despite knowing the seriousness of plaintiff's complaint, the circumstances, and the risk of injury.[22]  Plaintiff alleges that Mayuman instructed him to continue his weight loss, return to work, and denied plaintiff medication.  Plaintiff alleges it was not until March 17, 2006, that Mayuman referred plaintiff to a physician who ordered x-rays and medication for plaintiff.  As a result, plaintiff alleges he was forced to endure serious pain and discomfort while incurring further injuries.[23]

---

[20]Id.

[21]Plaintiff's Complaint, Docket Entry No. 1, Statement of Claim, p. 2.

[22]Plaintiff's More Definite Statement, Docket Entry No. 10, p. 2.

[23]Id.

**F.   Ms. Mosley, RNP**

Plaintiff alleges that Mosley was deliberately indifferent to his serious medical needs because she refused to administer adequate medical treatment despite knowing the seriousness of plaintiff's complaint and the risk of further injury.[24]  Plaintiff alleges that on June 28, 2006, Mosley re-ordered his x-rays and refused to give plaintiff work restrictions until the x-rays were reviewed by a doctor.[25]  As a result, plaintiff alleges he incurred further injuries.

## II.   Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment, and plaintiff's claims against them in their personal capacities are barred by qualified immunity.   In support of their motion for summary judgment defendants submit relevant portions of plaintiff's medical records, grievance records, and affidavits executed by Ernestine Julye, M.D. and Margaret Mosley, RNP.  Plaintiff has not filed a response to defendants' motion for summary judgment.

**A.   Summary Judgment Standard**

Summary judgment is warranted if the moving party establishes that there is no genuine dispute as to any material fact and that

---

[24]<u>Id.</u> at 3.

[25]<u>Id.</u>

the movant is entitled to judgment as a matter of law.   Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552
(1986).   An examination of substantive law determines which facts
are material.   Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505,
2510 (1986).   Material facts are those facts that "might affect the
outcome of the suit under the governing law."   Id.   A material fact
creates a genuine issue if the evidence is such that a reasonable
trier of fact could resolve the dispute in the nonmoving party's
favor.   Id. at 2511.   Rule 56(c) authorizes summary judgment
against a party who fails to make a showing adequate to establish
the essential elements of a party's case.   Celotex Corp., 106 S.Ct.
at 2552.

The movant must inform the court of the basis for summary
judgment and identify relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate there are no genuine fact issues.   Id. at 2553;
see also Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1046-47 (5th
Cir. 1996).   Once the movant makes this showing, the burden shifts
to the nonmoving party to show by affidavits, depositions, answers
to interrogatories, admissions on file, or other admissible
evidence that summary judgment is not warranted because genuine
fact issues exist.   Celotex Corp., 106 S.Ct. at 2552.   Conclusory
claims, unsubstantiated assertions, or insufficient evidence will
not satisfy the nonmovant's burden.   Wallace, 80 F.3d at 1047.   If
the nonmovant fails to present specific evidence showing there is

-8-

a genuine issue for trial, summary judgment is appropriate.
Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992).

## B.   Undisputed Facts

Plaintiff's medical records and grievance records establish
the following facts.  Plaintiff is a forty-seven year old male with
a history of morbid obesity and lower back and neck pain.[26]  Prior
to January 1, 2006, plaintiff was receiving treatment for high
blood-pressure and Hepatitis C.[27]  On January 6, 2006, plaintiff
began seeking treatment for pain in his legs and abdomen.  Mayuman
examined plaintiff on January 6, 2006, and concluded that
plaintiff's morbid obesity was the likely cause of his pain.
Mayuman treated plaintiff for pain, and plaintiff and Mayuman
discussed plaintiff's diet and exercise.[28]

On January 20, 2006, plaintiff again reported to Mayuman for
treatment and indicated that he wanted sedentary work instead of an
assignment in the fields.  Mayuman discussed with plaintiff the
importance of weight reduction.  However, plaintiff told Mayuman he
was purposely gaining more weight to avoid field work.[29]

---

[26]Defendant's Motion for Summary Judgment, Docket Entry No. 31,
Appendix D, Medical Records, pp. 2-4.

[27]Id. at 2.

[28]Defendant's Motion for Summary Judgment, Docket Entry No.
31, Appendix A, Affidavit of Dr. Ernestine Julye, M.D., first un-
numbered page; see also id., Appendix D, Medical Records, pp. 2-
3.

[29]Id., Appendix A, Affidavit of Dr. Ernestine Julye, M.D.,
second unnumbered page; see also id., Appendix D, Medical Records,

Plaintiff was treated again on February 13, 2006. Mayuman informed plaintiff of the health benefits of a low fat and low sodium diet. No changes were made to plaintiff's medical restrictions.[30]

On February 24, 2006, plaintiff reported for work but advised Gustofson that he was physically incapable of climbing onto the work trailer. Despite plaintiff's warning, Gustofson ordered plaintiff to climb onto the work trailer because the medical staff had cleared plaintiff for work detail and because plaintiff had no known medical restrictions.[31] Plaintiff stumbled and fell to the ground while attempting to comply with Gustofson's order. After plaintiff fell, Gustofson refused to seek medical aid for plaintiff.[32]

On February 28, 2006, plaintiff was again called to work, and while trying to comply with another order to climb onto the work trailer, plaintiff again fell.[33] This time medical staff were called and arrived to find plaintiff lying on the ground.[34] When asked what happened, plaintiff stated he fell off the trailer and injured his lower back and left shoulder.[35]

---

p. 7.

[30]Id., Appendix D, Medical Records, pp. 11-12.

[31]See id., Appendix C, Offender Grievance Records, p. 60.

[32]Id. at 45-46, 54.

[33]Id., Appendix D, Medical Records, pp. 13, 18.

[34]Id. at 18.

[35]Id. at 13, 18.

Nagel examined plaintiff after his fall and noted that plaintiff was awake, cognizant, and without visible injuries or respiratory distress.[36]  Nagel offered plaintiff both treatment for pain and a two-day cell pass, but plaintiff refused.[37]  As plaintiff returned to his housing location, Nagel noted that plaintiff walked normally and without distress.[38]

On March 1, 2006, plaintiff submitted a sick call request asking to be seen for swelling in his legs and back pain.[39]  On March 3, 2006, Mayuman examined plaintiff and found no bruising or swelling on his left shoulder or back.  Mayuman ordered a lumbar spine x-ray, a shoulder x-ray, and treated plaintiff for pain.[40]

On March 7, 2006, plaintiff was seen by Nagel for shoulder and back pain.[41]  Plaintiff said he wanted to work but could not because he was too big.  An examination found that plaintiff walked without difficulty or swelling in his legs, was able to sit and stand without difficulty, and had a good range of motion in his shoulders.  Accordingly, Nagel concluded that there was no need to change plaintiff's restrictions and plaintiff should continue with

---

[36]Id. at 13.

[37]Id.

[38]Id.

[39]Id. at 14.

[40]Id. at 16.

[41]Id. at 17.

weight loss and return to work.  Nagel also saw plaintiff on March 14, 2007, and described him as walking and moving well.[42]

On March 23, 2006, plaintiff saw Dr. Austin for lower back pain, which plaintiff complained extended down into his knees. Dr. Austin's assessment was that plaintiff suffered from joint pain, lumbar nerve root irritation, which he noted could be related to plaintiff's obesity.  Dr. Austin also noted that plaintiff had a history of back injury prior to incarceration and no history of knee injury.[43]

On April 13, 2006, Dr. Williams saw plaintiff for chronic back and knee pain.  Dr. Williams told plaintiff that fresh air and hard work were good for him and that plaintiff's current work assignment was fine.  Additionally, Dr. Williams gave plaintiff medication for his joint pain.[44]

On May 9, 2006, plaintiff was seen for lower back and knee pain and headaches.[45]  Nagel ordered pain medication and added a new blood pressure medication.[46]  Plaintiff was instructed on the importance of exercise, and it was noted that he was reluctant to

-------------------

[42]Id. at 25.

[43]Id. at 30.

[44]Id. at 32.

[45]Id. at 34.

[46]Id., Appendix A, Affidavit of Dr. Ernestine Julye, M.D., second unnumbered page.

follow these instructions.    Nagel also approved of plaintiff's current work assignment.[47]

On June 27, 2006, plaintiff submitted a sick call request concerning pain in his lower back and left shoulder.[48]   On June 28, 2006, Mosley addressed plaintiff's complaints of back, shoulder, and leg pain.   She found plaintiff walked normally and was able to get in and out of his chair without any problems.   Plaintiff told Mosley that he wanted x-rays done so that he could get restrictions from field work.    He also stated that he did not want his medications changed and would not return to the field no matter what, even if he did not get a restriction.[49]

On July 14, 2006, Dr. Williams addressed plaintiff's complaints of back and shoulder pain.    Upon examination, Dr. Williams found that plaintiff's walk was slow and lumbering, he did not flex well due to his large belly, and he showed signs of arthritis in his knees.[50]   As a result, Dr. Williams decided to add to plaintiff's restrictions:  sedentary work, limited standing, no lifting over twenty-five pounds, no bending at the waist, no squatting, and no climbing.[51]   There is nothing in the record that

---

[47]Id., Appendix A, Affidavit of Dr. Ernestine Julye, M.D., fifth unnumbered page; see also id., Appendix D, Medical Records, p. 34.

[48]Id., Appendix D, Medical Records, p. 36.

[49]Id. at 37.

[50]Id. at 38.

[51]Id., Appendix A, Affidavit of Dr. Ernestine Julye, M.D., fifth unnumbered page; see also id., Appendix D, Medical Records, pp. 38-39.

indicates any defendant asked plaintiff to act contrary to these restrictions after this date.  In fact, after Dr. Williams added the restrictions, there is no record of plaintiff again complaining of either back or leg pain.[52]

On September 18, 2006, x-rays of his shoulder and lumbar spine were completed at University of Texas Medical Branch in Galveston. No fracture or dislocation was seen in either shoulder.  Moderate degenerative changes were found in his spine.[53]

## C.  Analysis

Plaintiff has sued defendants under § 1983 for alleged deliberate indifference to his serious medical needs.  Although plaintiff has failed to either plead a specific form of relief or indicate the capacity in which he is suing defendants, the court construes plaintiff's complaint as stating a claim for damages against the defendants in their individual capacities.  The court bases this interpretation on the fact that plaintiff's claims all indicate a desire to obtain relief from the defendants' past actions or omissions, rather than to prevent future misconduct.[54]

---

[52]Id., Appendix A, Affidavit of Dr. Ernestine Julye, M.D., fifth unnumbered page.

[53]Id., Appendix D, Medical Records, pp. 41-42.

[54]For example, plaintiff's claims focus exclusively on defendants' alleged failure to provide plaintiff x-rays or adequate medical treatment after he fell from the work trailer, and that these past actions caused him to sustain serious injuries and endure pain and discomfort.  See Plaintiff's More Definite Statement, Docket Entry No. 10, p. 8.

Accordingly, because the court construes the complaint as one for damages, the court also construes plaintiff's complaint as seeking recovery from the defendants in their individual, rather than their official, capacities; otherwise, plaintiff's claims would be barred under the Eleventh Amendment.  See Clay v. Tex. Women's Univ., 728 F.2d 714, 715 (5th Cir. 1984).

Under § 1983 a private individual may sue any person for damages who acts "under the color of law" and deprives the litigant of any constitutionally guaranteed right, privilege, or immunity. 42 U.S.C. § 1983.  In conjunction with his § 1983 claim, plaintiff alleges that defendants violated his Eighth Amendment rights against cruel and unusual punishment.

The Eighth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, proscribes cruel and unusual punishment.  Victoria W. v. Larpenter, 369 F.3d 475, 483 (5th Cir. 2004).  Plaintiff alleges that the defendants violated his Eighth Amendment rights by acting with deliberate indifference to his medical condition and injuries.

A prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment when the official acts with "deliberate indifference" to the inmate's "serious medical needs." Id. at 291; see Estelle v. Gamble, 97 S.Ct. at 287, 291.  To establish that an official acted with deliberate indifference to a serious medical need an inmate must prove that he was refused

-15-

treatment, his complaints were ignored, he was intentionally treated incorrectly, or that prison officials engaged in some similar conduct that clearly demonstrated their wanton disregard for the inmate's serious medical needs. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Id. at 345 n.12. An official acts with deliberate indifference when he acts or fails to act while consciously disregarding knowledge that an inmate faces a "substantial risk of serious harm" to his health or safety. Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994). An official must have actual knowledge of the substantial risk; it is not enough to prove that the official should have known about the risk. Id. However, if a risk was obvious, a prison official's knowledge of that risk may be inferred. Id. at 1981. Allegations of deliberate indifference may be rebutted by medical records, examinations, medications, and diagnoses. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). An inmate's mere disagreement with his medical treatment is normally not actionable under § 1983. Id. Decisions concerning forms of treatment or diagnostic techniques are matters of medical judgment and do not represent cruel and unusual punishment. Estelle, 97 S.Ct. at 293.

In response to plaintiff's allegations defendants have raised the affirmative defense of qualified immunity, arguing that the

undisputed evidence establishes that they were not deliberately indifferent to plaintiff's medical needs.  Once the defense of qualified immunity is asserted the burden shifts to the plaintiff to overcome the defense.  <u>Estep v. Dallas County, Tex.</u>, 310 F.3d 353, 366 (5th Cir. 2002).  To overcome the defendants' presumed immunity within the context of a summary judgment motion, plaintiff must show that (1) the defendants violated his constitutional rights and (2) the violation was objectively unreasonable.  <u>Bolton v. The City of Dallas</u>, 472 F.3d 261, 265-66 (5th Cir. 2006).  In this case the court concludes that plaintiff has failed to satisfy the first prong of the <u>Bolton</u> test; he has not shown that defendants acted with deliberate indifference to his serious medical needs.

## 1.  <u>Sgt. Gustofson, Correctional Officer</u>

Plaintiff's claims that Gustofson acted with deliberate indifference to his serious medical needs when Gustofson denied plaintiff access to medical care after his initial fall on February 24, 2006.  Even assuming that Gustofson denied plaintiff access to medical care, however, plaintiff has failed to satisfy his burden because he has not established that he had a "serious medical need."  Plaintiff has not shown that after he fell his medical needs were so serious and apparent that anyone would have recognized that he required medical care.  To the contrary, medical staff examining plaintiff after his second fall – only four days

after his first – found no bruising or swelling as a result of either of plaintiff's falls and found that plaintiff walked normally without distress.  Moreover, plaintiff has presented no evidence that he had already been recommended for treatment. Plaintiff had no restrictions that prevented him from getting on the work trailer and had been cleared by the medical staff to go to work.  Consequently, because plaintiff has failed to show that Gustofson acted with deliberate indifference to plaintiff's serious medical needs, Gustofson is entitled to qualified immunity.[55]

    2. <u>Mr. Nagel, PA</u>

Plaintiff asserts two deliberate indifference claims against Nagel based on treatment Nagel provided plaintiff after plaintiff's fall on February 28, 2006:  (1) that Nagel refused to refer plaintiff to a physician for further examination and (2) that Nagel

---

[55]Liberally construed, plaintiff's complaint alleges that Gustofson further acted with deliberate indifference when Gustafson forced plaintiff to work beyond his medical limitations by ordering him to climb onto the work trailer.  A claim of deliberate indifference based on an inmate's work assignment is actionable only when a prison official assigns an inmate to a job that the official knows would "significantly aggravate" the inmate's serious medical needs.  <u>Jackson v. Cain</u>, 864 F.2d 1235, 1246 (5th Cir. 1989).  To the extent plaintiff makes this claim, Gustofson is entitled to qualified immunity.  As already noted, plaintiff has presented no evidence indicating that he had a serious medical need.  Moreover, plaintiff has not introduced evidence, and there is no indication in the record, that Gustafson made the work assignment, or that in making the assignment Gustafson knew that it would significantly aggravate plaintiff's (assumed) serious medical needs.

refused to order x-rays to determine the extent of plaintiff's injuries.[56]

Plaintiff's first claim cannot survive summary judgment because plaintiff has not presented evidence showing that Nagel was deliberately indifferent when he did not refer plaintiff to a physician for further examination.  Nagel examined plaintiff, gave him medication, and found no visible signs of injury or respiratory distress.  Nagel even offered plaintiff treatment for his pain and a two-day cell pass, but plaintiff refused the offer, telling Nagel that he did not need either; and when plaintiff walked back to his housing location after his visit with Nagel, Nagel saw plaintiff walking normally and on his own power.[57]

Plaintiff's second claim – that Nagel refused to order x-rays as part of his indifferent medical treatment – also fails.  Plaintiff acknowledges in his complaint that he was told x-rays had been ordered, but that the x-ray machine was too small and, thus, no x-rays could be taken because plaintiff, at that time, weighed 456 pounds.  Moreover, the question of whether an x-ray was medically necessary is a matter of medical judgment; and the decision to not order one, without more, does not represent cruel and unusual punishment.  Estelle, 97 S. Ct. at 293 ("A medical

---

[56]Plaintiff's More Definite Statement, Docket Entry No. 10, pp. 1-2.

[57]Defendant's Motion for Summary Judgment, Docket Entry No. 31, Appendix D, Medical Records, p. 13.

decision not to order an X-ray . . . does not represent cruel and unusual punishment. At most it is medical malpractice[.]"). Consequently, because plaintiff has not shown that Nagel acted with deliberate indifference, Nagel is qualifiedly immune from plaintiff's suit.

### 3. Mrs. Crawford, RNP

Plaintiff alleges that Crawford was deliberately indifferent to his serious medical needs because despite the numerous letters he sent Crawford requesting her help in getting an x-ray after the hospital told him he was too large for their machine, she refused to assist him. Plaintiff's claim fails for two reasons. First, plaintiff has not submitted any evidence that he sent any letters to Crawford. The only source for such information is plaintiff's complaint. Summary judgment cannot be defeated by such unsubstantiated assertions. Furthermore, the record indicates that plaintiff continued to receive attention and treatment from the medical staff at the Texas Department of Criminal Justice (TDCJ).

Second, plaintiff acknowledges that the hospital denied his request for x-rays because he was too large to be accommodated. He does not, however, contend that Crawford was responsible for the hospital's decision, that her statement (that the x-ray machine was too small to accommodate plaintiff) was false, or that the hospital used the smaller machine purposely to deny plaintiff treatment. Accordingly, there is no indication that Crawford acted with

deliberate indifference toward plaintiff, thereby entitling her to qualified immunity from suit.

### 4. Dr. Williams

Plaintiff asserts three meritless deliberate indifference claims against Dr. Williams. Plaintiff's first claim fails because it is conclusory: Plaintiff has not provided any evidence showing that Dr. Williams continuously refused to administer proper and adequate treatment. Moreover, the record belies any such contention; Dr. Williams treated plaintiff on at least two occasions and was ultimately the person responsible for changing plaintiff's work restrictions to provide for sedentary work. Plaintiff's second claim – that Dr. Williams failed to place plaintiff on medical restrictions until after reviewing x-rays ordered by another doctor – fails because the undisputed facts show that Dr. Williams placed plaintiff on work restrictions on July 14, 2006, which was more than two months prior to the arrival of his x-rays from UTMB Galveston (September 18, 2006). Finally, plaintiff's claim that Dr. Williams acted with deliberate indifference when she told plaintiff to lose weight, get fresh air, and work hard is equally meritless, and amounts to nothing more than a dispute over Dr. Williams' medical judgment.[58] Accordingly,

---

[58]Plaintiff's claim that Mayuman acted with deliberate indifference when he recommended plaintiff lose weight and return to work fails for the same reasons.

Dr. Williams is entitled to qualified immunity from plaintiff's suit.

   5. <u>Mr. Mayuman, PA</u>

   Plaintiff claims that Mayuman was deliberately indifferent to his serious medical needs because Mayuman refused to treat plaintiff on more than one occasion, denied him medication, and delayed referring plaintiff to a doctor who ordered x-rays and pain medication until March 17, 2006, and advised plaintiff to lose weight.  Plaintiff's claim fails because plaintiff has not provided any summary judgment evidence to support his allegations. Moreover, plaintiff's medical records show that Mayuman saw, examined, and treated plaintiff upon request.  On more than one occasion Mayuman discussed diet and weight loss with plaintiff, reviewed plaintiff's medical restrictions, and treated plaintiff's pain.  Furthermore, the record shows that Mayuman himself ordered x-rays for plaintiff on March 3, 2006.  Consequently, Mayuman is entitled to qualified immunity.

   6. <u>Ms. Mosley, RNP</u>

   Plaintiff claims that Mosley acted with deliberate indifference when Mosley re-ordered plaintiff's x-rays but refused to restrict plaintiff from work until those x-rays were reviewed by a doctor, which led plaintiff to incur further injuries.  Mosley's decision to delay does not show deliberate indifference.  Plaintiff

does not provide evidence of these further injuries or explain how Mosley's decision to wait until a doctor reviewed the x-rays contributed to them.    Nor does plaintiff provide evidence that Mosley had the authority to restrict plaintiff from work before a doctor reviewed the x-ray results.

Plaintiff stated that his main desire in seeking restrictions was to avoid field work, not to avoid pain.    Moreover, Mosley examined plaintiff and found that he walked normally, was able to get in and out of his chair without difficulty, and did not require a change in medication.    Therefore, plaintiff's allegations constitute nothing more than a dispute over medical judgment, which entitles Mosley to qualified immunity against plaintiff's suit.

### III.  Conclusion and Order

The undisputed summary judgment evidence establishes that Charles Nagel, Jan Gustofson, Betty Williams, Margaret Mosley, Alfredo Mayuman, and Shanta Crawford are entitled to qualified immunity because plaintiff has not submitted any evidence that, if proven, would show that the defendants acted with deliberate indifference to plaintiff's serious medical needs.  Plaintiff has not presented evidence that he was denied medication, denied access to medical attention, was intentionally treated incorrectly, or that defendants exhibited any conduct that demonstrates a clear indifference to his serious medical needs.  On the contrary, the evidence reflects that plaintiff was continuously seen, evaluated,

and treated despite plaintiff's reluctance to adhere to the defendants' medical advice.  Although plaintiff may disagree with defendants' treatment and medical opinions, those disagreements do not amount to a constitutional violation.  The court concludes that defendants are entitled to summary judgment on plaintiff's claims asserted against them in their personal and official capacities.  Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED**.  Plaintiff's Motion for Appointment of Counsel (Docket Entry No. 13), Plaintiff's Declaration for Entry of Default (Docket Entry No. 15), and Plaintiff's First Request for Production of Documents (Docket Entry No. 16) are **DENIED**.  Defendant Mosley's Motion to Clarify (Docket Entry No. 17) is **DENIED AS MOOT**.

The Clerk shall provide copies of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 6th day of August, 2008.

SIM LAKE
UNITED STATES DISTRICT JUDGE